juries in its title, "An act for compensating the families of persons killed by accidents." Many of the United States have enacted similar statutes, and among these states Maryland has followed quite closely the act of parliament. The law of Maryland (1 Code, 449), like the act of parliament, establishes in one section the general right to redress, and in another provides the mode in which redress may be pursued.

The right is quite separate from the remedy. The rights, like that of a statute lien upon a vessel for repairs in home ports, may be enforced in admiralty by its own processes. It is not necessary to pursue the statutory remedy in order to enforce the statutory rights.

It is clear, therefore, that for an injury such as that proved in this case, the wife and son of the man killed may have redress in admiralty. And the act of 1838, in the section already quoted, seems to contemplate no distinction between actions for injuries to hands employed on board, and to injuries to other persons on board. It appears to regard the negligence of the person employed as the negligence of the owners, and infers the existence of it from the unheeded or too little heeded defects of the steam apparatus.

I incline, therefore, to the opinion that the libellants in this case are entitled to redress against the owners, though the engineer may have been immediately responsible by his own negligence for the injury. It is not necessary, however, in this case, to decide this particular point.

3. The remaining question is, "Are the libellants entitled to redress in the form of action which they have adopted?"

The statute of 1838 recognized, and provided a rule of evidence for actions against owners. It would seem that this statute must have been amended while under legislative consideration. The sixth section made owners and masters responsible for injuries to property of passengers by explosion of boilers, and derangement of engine or machinery, caused by failure to employ competent engineers. But this section seems to have been superseded by the broader provisions of the thirteenth, which, as has been already said, sanctioned actions for all injuries occasioned by bursting of boilers, collapse of flues, or other injurious escape of steam. But no action is sanctioned by this section except against owners, and by the 30th section of the act of 1852 (10 Stat. 69), the action in rem is limited to passengers. It is a fair, if not an inevitable inference, that it was the intention of congress to confine the remedy in rem to passengers, and to allow to others on board injured by the causes enumerated only the remedy in personam. And it is obvious that congress intended to provide for all cases of redress for injuries from these causes, and that no action for such injuries can be maintained unless sanctioned by its legislation.

While, therefore, I am unable to adopt the views of the counsel for the respondents, that parties in the predicament of the libellants have no remedy unless against the engineer of the steamer, I am constrained on the other hand to the conclusion, that no other remedy can be had except an action in personam against the owners. The decree of the district court dismissing the libel against the steamer, must be affirmed.

I venture to add, in the language of Lord Brougham, in Paterson v. Wallace [1 Macq. H. L. Cas. 748], a case in some of its features very similar to this, that "I can not but hope that the defendants will see the propriety of putting an end to the case, by making some voluntary and benevolent compensation to the unfortunate appellants."

---

HIGHLAND ST. RY. CO. (RAILWAY REGISTER MANUF'G CO. v.). See Case No. 11,535.

HIGHLEYMAN, The (UNITED STATES v.). See Case No. 15,361.

---

## Case No. 6,478.

### Ex parte HIGHT.

[See 2 Car. Law Repos. 47.]

---

## Case No. 6,478a.

HIGHT et al. v. CONTINENTAL LIFE INS. CO.

[10 Ins. Law J. 223.]

Circuit Court, D. Indiana. 1881.

LIFE INSURANCE—PREMIUM—TENDER—PAID-UP POLICY.

Where, by the terms of the contract, a premium on a life policy is payable half in cash and half in note, a notification by the company, through its agent, that it would not accept a note, as it had done before, but that the full premium must be paid in cash, is a violation of the contract, which excuses from a formal tender of the premium thereafter, unless the insured had reason to believe, from its conduct, that the company would accept a tender in accordance with the terms of the contract. If, under such circumstances, the assured afterwards offered to accept a paid-up policy, and the company never accepted the offer, it is liable on the original policy.

[This was an action on an insurance policy by Hight and Handy, administrators, etc., for the estate of J. S. Smith Hunter, against the Continental Life Insurance Company.]

Finch & Finch, Hill, and Butler, for plaintiffs.

Buchanan & Manlove, for defendant.

GRESHAM, District Judge (charging jury). The contract sued on was entered into on the 2d day of December, A. D. 1870. The defendant insured the life of J. S. Smith Hunter for $10,000 in consideration of twenty annual premiums for $472.20 each. The first premium was paid at the time the contract was